IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICK PETKOVIC, | ) | CASE NO. 1:14-CV-2292 |
| | ) | |
| Petitioner, | ) | JUDGE NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| KIMBERLY CLIPPER, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | (Doc. Nos. 9, 11) |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Currently pending before the Court are: (1) the motion of Petitioner Nick Petkovic ("Petitioner" or "Petkovic") to stay proceedings and hold them in abeyance to allow him to return to state court to exhaust his unexhausted claim; and (2) Respondent's motion to dismiss the petition because it contains an unexhausted claim. For the following reasons, the magistrate judge recommends that:

(1) Petitioner's motion for stay and abeyance (doc. no. 11) be DENIED;

(2) Respondent's motion to dismiss the petition (doc. no. 9) be DENIED; (3) the Court instruct Petitioner to elect, within 15 days, whether to dismiss his second ground for relief or dismiss his entire petition; and (4) if Petitioner elects to dismiss his second ground for relief, Respondent should be required to file the Return of Writ in this matter within 30 days of Petitioner's election.

# I. Introduction

The state appellate court that affirmed Petitioner conviction and sentence noted the following facts:

> In the summer of 2009, 17–year–old N.P., who is developmentally delayed, met defendant online through the website "okcupid.com." Defendant was 48 years old at the time. Defendant began a sexual relationship with N.P., which took place at N.P.'s house while N.P.'s mother was working. In April 2010, a friend of N.P. became concerned about this inappropriate relationship, and spoke with N.P.'s school guidance counselor who contacted Bay Village Police Detective Kevin Krolkosky.
>
> The police confronted defendant who did not deny his relationship with N.P., but said it was platonic until she turned 18. The police asked N.P.'s mother if she knew who defendant was. She did not.
>
> On April 28, 2010, defendant took N.P. to downtown Cleveland where they got a marriage license and a wedding ceremony was performed. N.P.'s mother was unaware of the situation. Later that day, defendant had an interview with the Bay Village police, in which he stated that he loved N.P. despite her cognitive deficits, and he would like to marry her someday. Defendant did not tell the police that he had, in fact, married N.P. earlier that day. N.P. told her mom about the wedding, and N.P.'s mom realized that N.P. did not understand what happened. N.P.'s mom called the authorities immediately.
>
> On April 30, 2010, the police interviewed N.P. The information about when she met and began having sex with defendant was inconsistent with the information that defendant provided the authorities. The police also learned that defendant documented his sexual activities with N.P. on video and that some of these videos were taken before N.P.'s 18th birthday.

*State v. Petkovic*, No. 97548, 2012-Ohio-4050 at ¶¶ 2-5.

## II.  State Court Proceedings

**A.  Trial Court Proceedings**

In October 2010, the State issued a 56-count indictment charging Petitioner with multiple counts of: gross sexual imposition ("GSI"); rape; pandering sexually-oriented material involving a minor; endangering children; kidnaping with a sexually violent predator designation; tampering with evidence; and possessing criminal tools. (Doc. No. 9-1 at Ex. 1.)  The GSI and rape counts included an element that victim's "ability to resist or consent is substantially impaired because of a mental . . . condition," as well as that the defendant "knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental . . . condition." Ohio Rev. Code § 2907.05(a)(5) (GSI); Ohio Rev. Code § 2907.02(A)(1)(c) (rape).

Prior to trial, Petitioner moved for leave to allow an independent examiner to assess Petitioner with respect to her ability to consent to sexual activity. (Doc. No. 9-1 at Ex. 3.)  After a hearing, the trial court ruled that Petitioner's expert, neuropsychologist John Fabian, could examine N.P regarding her "independent living skills, her emotional perception abilities, and her interpersonal functioning," but that Dr. Fabian could not inquire into N.P.'s "mental thought process as to when or if she consented to having sex with defendant." Petkovic, 2012-Ohio-2050 at ¶¶ 17-18.  After conducting his examination, Dr. Fabian concluded that he was not able to evaluate N.P.'s ability to consent to a sexual relationship with Petitioner. Id. at ¶ 21.  Petitioner opted not to call Dr. Fabian as a witness at trial. Id.

After trial in October 2011, a jury convicted Petitioner of 13 counts of rape, seven

counts of GSI, nine counts of pandering, seven counts of endangering children, seven counts of kidnaping, one count of tampering with evidence, and one count of possessing criminal tools.[1] (Doc. No. 9-1 at Ex. 13.) Thereafter, the state trial court sentenced Petitioner to concurrent and consecutive sentences totaling 100 years to life. (*Id*. at Ex. 18.)

**B.     Direct Appeal**

Petitioner, through different counsel, filed a direct appeal, in which he raised the following assignments of error:

> I.      Trial counsel prevented appellant from presenting a defense [when it limited the scope of Dr. Fabian's assessment].
>
> II.     The trial court abused its discretion by ordering consecutive sentences which amounted to a *de facto* life sentence.
>
> III.    The evidence presented at trial was insufficient to sustain convictions on the various counts in the indictment.
>
> IV.     The verdicts are against the manifest weight of the evidence.
>
> V.      The evidence on the sexually violent predator specification was insufficient as a matter of law.
>
> VI.     Evidence that Appellant did legal research did not constitute consciousness of guilt.
>
> VII.    The trial court never defined sexual motivation for the jury.

---

[1] After the State rested its case, it moved to nolle three counts of GSI, five counts of rape, two counts of endangering children and one count of kidnaping. (Doc. No. 9-1 at Ex. 11.) The jury convicted Petitioner of the remaining counts in the Indictment. (*Id*. at Ex. 13.)

(Doc. No. 9-1 at Ex. 21.) In September 2012, the state appellate court affirmed Petitioner's conviction and sentence. *Petkovic*, 2012-Ohio-4050 at ¶62.

In October 2012, Petitioner filed a notice of appeal in the Ohio Supreme Court. (Doc. No. 9-1 at Ex. 24.) In his memorandum in support of jurisdiction, Petitioner raised the following proposition of law:

> *State v. Zeh*, [509 N.E.2d 414, 31 Ohio St.3d 99 (Ohio 1987)], requires a court to permit a defense expert to evaluate an accuser for her ability to consent to a sexual relationship after the State's expert determined that the accuser is in a borderline range of intellectual functioning.

(*Id*. at Ex. 27.) In May 2013, the Ohio Supreme Court declined jurisdiction. *State v. Petkovic*, 986 N.E.2d 1021 (Table), 135 Ohio St.3d 1431 (Ohio 2013). Petitioner filed a petition for a writ of *certiorari*, which the United States Supreme Court denied on October 15, 2013. *Petkovic v. Ohio,* 134 S. Ct. 434 (2013).

### III. Proceedings in this Court

On October 14, 2014, Petitioner, through new counsel, filed his § 2254 petition. (Doc. No. 1.) He asserted the following two grounds for relief:

> I. Denial of Right to Present a Defense: The trial court's restriction on Petkovic's expert to fully testify on his behalf denied his him right to present a complete defense. Specifically, the trial court refused to allow a defense expert to examine the alleged victim so that he could fully determine whether that victim was "substantially impaired["]
>
> II. Ineffective Assistance of Trial Counsel: Defense counsel failed to call three essential witnesses for Petkovic during his trial. The three witnesses could have testified in support of the defense position that Petkovic's wife was competent and not substantially

5

> impaired when she agreed to marry him. Although not mental health experts, the witnesses, including a pastor, could have testified as to his wife's actions in her daily activities among other things which might have persuaded the jury that she was not substantially impaired.

(Doc. No. 1-2.) Petitioner conceded that his second ground for relief is not exhausted. (*Id*. at unnumbered p. 5.) He asserted, however, that "it was during the preparation of this petition that this issue was determined to be viable." (*Id*.) Petkovic explained that he was in the process of preparing a state court post-conviction petition and would "advise the [C]ourt and [Respondent] when the post[-]conviction petition is filed, or if the determination is made not to go forward with the filing." (*Id*.)

In February 2015, Respondent filed a motion to dismiss the petition on the basis that it was mixed, *i.e.*, that it contained exhausted and unexhausted claims. (Doc. No. 9.) Thereafter, Petitioner filed his motion for a stay and abeyance, in which he requests that this Court stay proceedings and hold them in abeyance to allow him to return to state court to exhaust his second ground for relief. (Doc. No. 11.) In support of his motion, Petitioner attached: (1) a state trial court docket reflecting that, on February 17, 2015, he filed his state court petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21; and (2) a copy of a § 2953.21 petition – purportedly filed in Petitioner's state court criminal proceedings – asserting the ineffective assistance of counsel claim set forth in the second ground for relief in the habeas petition. (Doc. Nos. 11-1, 11-2.)

### IV.  Law and Analysis

**A.  Timeliness**

Because Petitioner filed a petition for writ of *certiorari* to the United States

Supreme Court, his one-year period of time began to run on the date on which the Supreme Court denied his petition: October 15, 2013. See *Gonzales v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 653-54 (2012). Thus, Petitioner's period of limitations expired on October 15, 2014, the day after he filed his § 2254 petition in this Court.

**B.     Stay and Abeyance**

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. See 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted his state remedies. See *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims. See *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990). A federal district court may not adjudicate a "mixed petition," *i.e.*, one that contains both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). Further, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244 , limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus to one year from "the date on which the judgment became final or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1).

In *Rhines v. Weber*, 544 U.S. 269, 275 (2005), the Supreme Court recognized

that, "as a result of the interplay between" AEDPA's one-year statute of limitations and the total exhaustion requirement of *Lundy*, "petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review." Accordingly, the Court determined that, in the case of a mixed petition, a district court has the discretion to employ a "stay and abeyance" procedure:

> Under this procedure, rather than dismiss the mixed petition . . . a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court.

*Id*. at 275-76.

The Court cautioned that "stay and abeyance should be available only in limited circumstances," because it "has the potential to undermine . . . AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings." *Id*. at 277. Accordingly, the Court determined that stay and abeyance is appropriate only where the petitioner can show: (1) good cause for his failure to exhaust; (2) that his unexhausted claims are not "plainly meritless"; and (3) that there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Id*. at 277-78; *see also Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009).

Generally, to show good cause for a failure to exhaust state remedies, a

8

petitioner must show why he failed to use available state remedies timely and appropriately. *See, e.g., Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009) (finding that a lack of due diligence in discovering relevant facts was relevant to good cause for a failure to timely exhaust claims). Here, Petitioner has failed to establish good cause for this failure to exhaust his second ground for relief, and, thus, this Court should deny his motion for stay and abeyance.

In his second ground for relief, Petitioner asserts that his trial counsel was ineffective in failing to obtain the testimony of three witnesses at trial. According to Petitioner, these witnesses would have offered testimony regarding N.P.'s daily activities, such that the jury would not have concluded that N.P. was substantially impaired. According to Petitioner, he "became frustrated" during trial that "his counsel would not call witnesses on his behalf." (Doc. No. 1-2 at ¶ 34.) In the § 2953.21 petition that accompanies Petitioner's motion to stay, he asserts that, during trial and in the presence of the trial court, he and his trial counsel had a disagreement regarding trial counsel's refusal to call witnesses whose names Petitioner had provided to counsel. (Doc. No. 11-2 at ¶ 8.) In support of his § 2953.21 petition, Petitioner offers affidavits from himself, his sister, and a family friend, each describing the conflict between Petitioner and his trial counsel. (Doc. No. 11-2 at Exhibits.)

Under Ohio law, because this claim for relief relies on material outside of the record of the trial court proceedings – *e.g.,* affidavits regarding the disagreement between Petitioner and his trial counsel and, presumably, affidavits from the witnesses who did not testify – a post-conviction petition is the appropriate mechanism for asserting it in the state courts. *See State v. Richmond*, No. 97616, 2012 WL 2047991,

\*1 (Ohio App. Ct. July 12, 2012) (noting that, where a defendant's claim "concerns a matter outside the record . . . an appellate court cannot consider it on direct appeal because the court can only consider matters contained in the record").  Petitioner has apparently filed a state court petition for post-conviction relief asserting his ineffective assistance of trial counsel claim.  That § 2953.21 petition was not filed until after the expiration of his AEDPA statute of limitations.  Petitioner's only explanation for his failure to timely exhaust this claim is merely that he did not realize that such a claim was viable until he was preparing his § 2254 petition.[2]  Such an explanation is insufficient to merit a stay and abeyance.

As Petitioner states in his § 2953.21 petition, he was aware of the factual basis for his claim of ineffective assistance of trial counsel at the time of trial.  Further, his state court petition suggests that Petitioner was aware of the content of the testimony of the proposed witnesses.  There is no allegation that the State concealed facts or evidence.  In other words, this is a not a situation in which Petitioner was required to engage in substantial investigation or other effort to ascertain the factual and legal bases for his unexhausted claim.  He has been aware of the claim since he was convicted.  His failure to exhaust it is the result of his lack of diligence in pursuing it.  If a petitioner were able to exempt himself from the procedural and timeliness requirements of AEDPA merely by asserting that he was simply unaware that a potential claim was viable prior to the expiration of the one-year period, those procedural and timeliness requirements would be rendered futile.  *See, e.g., Rhines*, 544 U.S. at 276-77 ("Stay

---

[2] In his motion for a stay and abeyance, Petitioner does not address the requirements of *Rhines*.

and abeyance, if employed too frequently, has the potential to undermine [AEDPA's] twin purposes" of reducing delays in the execution of state criminal sentences and of respecting comity and federalism.) Accordingly, Petitioner's explanation for his failure to timely exhaust his second ground for relief is patently meritless, and insufficient to satisfy the good cause prong of *Rhines*. The motion for a stay and abeyance should be denied.

**C.     Motion to Dismiss**

The State urges this Court to dismiss the § 2254 petition because it contains unexhausted claims. In *Rhines*, however, the Supreme Court determined that, where a district court "determines that stay and abeyance is inappropriate," rather than dismissing a mixed petition in its entirety, "the court should allow the petitioner to delete the unexhausted claims and proceed with the exhausted claims . . . ." 544 U.S. at 278. Accordingly, this Court should: (1) deny the State's motion to dismiss the habeas petition direct Petitioner, within 15 days, to elect whether to dismiss his second ground for relief or dismiss his entire petition; and (2) if Petitioner elects to dismiss his second ground for relief, Respondent should be required to file the Return of Writ in this matter within 30 days of Petitioner's election.

11

### V. Conclusion

For the reasons given above: (1) Petitioner's motion for stay and abeyance (doc. no. 11) should be DENIED; (2) Respondent's motion to dismiss the petition (doc. no. 9) should be DENIED; (3) the Court should instruct Petitioner to elect, within 15 days, whether to dismiss his second ground for relief or dismiss his entire petition; and (4) if Petitioner elects to dismiss his second ground for relief, Respondent should be required to file the Return of Writ in this matter within 30 days of Petitioner's election.

Date: June 1, 2015              /s/ *Nancy A. Vecchiarelli*
                                United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985)*, reh'g denied,* 474 U.S. 1111.**