**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NICK PETKOVIC, | CASE NO. 1:14-cv-02292 |
| Petitioner, | JUDGE DONALD C. NUGENT |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| KIMBERLY CLIPPER, Warden | **REPORT AND RECOMMENDATION** |
| Respondent. | |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of Nick Petkovic ("Petkovic" or "Petitioner"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Petkovic*, Cuyahoga County Case No. CR-10-543261. For the following reasons, the magistrate judge recommends that the petition be DENIED.

## I. Background

In October 2010, the State issued a 56-count indictment charging Petitioner with multiple counts of: gross sexual imposition ("GSI"); rape; pandering sexually-oriented material involving a minor; endangering children; kidnaping with a sexually violent predator designation; tampering with evidence; and possessing criminal tools. (Doc. No. 9-1 at Exh. 1.) The GSI and rape counts included an element that victim's "ability to resist or consent is substantially impaired because of a mental . . . condition," as well

as that the defendant "knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental . . . condition."   Ohio Rev. Code § 2907.05(a)(5) (GSI); Ohio Rev. Code § 2907.02(A)(1)(c) (rape).

The state appellate court that affirmed Petitioner's conviction noted the following relevant facts:

> In the summer of 2009, 17-year-old N.P., who is developmentally delayed, met defendant online through the website "okcupid.com."  Defendant was 48 years old at the time.  Defendant began a sexual relationship with N.P., which took place at N.P.'s house while N.P.'s mother was working.  In April 2010, a friend of N.P. became concerned about this inappropriate relationship, and spoke with N.P.'s school guidance counselor who contacted Bay Village Police Detective Kevin Krolkosky.
>
> The police confronted defendant who did not deny his relationship with N.P., but said it was platonic until she turned 18.  The police asked N.P.'s mother if she knew who defendant was.  She did not.
>
> On April 28, 2010, defendant took N.P. to downtown Cleveland where they got a marriage license and a wedding ceremony was performed.  N.P.'s mother was unaware of the situation.  Later that day, defendant had an interview with the Bay Village police, in which he stated that he loved N.P. despite her cognitive deficits, and he would like to marry her someday.  Defendant did not tell the police that he had, in fact, married N.P. earlier that day.  N.P. told her mom about the wedding, and N.P.'s mom realized that N.P. did not understand what happened. N.P.'s mom called the authorities immediately.
>
> On April 30, 2010, the police interviewed N.P.  The information about when she met and began having sex with defendant was inconsistent with the information that defendant provided the authorities.  The police also learned that defendant documented his sexual activities with N.P. on video and that some of these videos were taken before N.P.'s 18th birthday.

*State v. Petkovic*, No. 97548, 2012-Ohio-4050 at ¶¶ 2-5.

## II. Procedural History

### A. Trial Court Proceedings

In October 2011, a jury convicted Petitioner of thirteen counts of rape, seven counts of GSI, nine counts of pandering, seven counts of endangering children, seven counts of kidnapping, one count of tampering with evidence, and one count of possessing criminal tools.[1]  (Doc. No. 9-1 at Ex. 13.)  After the jury returned its verdicts, on October 19, 2011, the state trial court sentenced Petitioner to concurrent and consecutive sentences totaling 100 years to life.  (*Id*. at Exh. 15.)

### B. Direct Appeal

Petitioner, through new counsel, filed a direct appeal, in which he asserted the following relevant assignments of error:

> I. Trial counsel prevented appellant from presenting a defense [when it limited the scope of Dr. Fabian's assessment].
>
> II. The trial court abused its discretion by ordering consecutive sentences which amounted to a *de facto* life sentence.
>
> III. The evidence presented at trial was insufficient to sustain convictions on the various counts in the indictment.
>
> IV. The verdicts are against the manifest weight of the evidence.
>
> V. The evidence on the sexually violent predator specification was insufficient as a matter of law.
>
> VI. Evidence that Appellant did legal research did not constitute consciousness of guilt.
>
> VII. The trial court never defined sexual motivation for the jury.

---

[1] After the State rested its case, it moved to nolle three counts of GSI, five counts of rape, two counts of endangering children and one count of kidnaping.  (Doc. No. 9-1 at Ex. 11.)  The jury convicted Petitioner of the remaining counts in the Indictment.  (*Id*. at Ex. 13.)

(Doc. No. 9-1, Exhs. 20, 21.)

On September 6, 2012, the state appellate court affirmed Petitioner's conviction and sentence. *Petkovic*, 2012-Ohio-4050 at ¶62.

On October 24, 2012, Petitioner filed a notice of appeal and motion for delayed appeal with the Ohio Supreme Court. (Doc. No. 9-1, Exhs. 24, 25.) On January 23, 2013, the Supreme Court of Ohio granted the motion for delayed appeal and ordered Petkovic to file his memorandum in support of jurisdiction within thirty days. (Doc. No. 9-1, Exh. 26.) On February 22, 2013, Petitioner, through counsel, raised the following proposition of law:

> *State v. Zeh*, [509 N.E.2d 414, 31 Ohio St.3d 99 (Ohio 1987)], requires a court to permit a defense expert to evaluate an accuser for her ability to consent to a sexual relationship after the State's expert determined that the accuser is in a borderline range of intellectual functioning.

(Doc. No. 9-1, Exh. 27.) I

On May 8, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio S. Ct. Prac. R. 7.08(B)(4). (Doc. No. 9-1, Exh. 29.)

On August 12, 2013, Petitioner filed a petition for a writ of *certiorari* (Doc. No. 9-1, Exh. 30), which the United States Supreme Court denied on October 15, 2013. *Petkovic v. Ohio*, 134 S. Ct. 434 (2013).

### III. Proceedings in this Court

On October 14, 2014, Petitioner, through counsel, filed his § 2254 petition. (Doc. No. 1.) He asserted the following grounds for relief: (1) denial of right to present a defense; and (2) ineffective assistance of trial counsel. (Doc. No. 1-2.)

4

Respondent sought to have the petition dismissed as it contained unexhausted claims, while Petitioner sought a stay and abeyance.  (Doc Nos. 9, 11.)  This Court determined that Petkovic's second ground for relief was unexhausted.  (Doc. Nos. 13, 15.)  Thereafter, Petkovic elected to dismiss his second ground for relief and, therefore, only his first ground for relief remains.[2]  (Doc. No. 16.)

### V. Procedural Issues

**A.     Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The Court of Common Pleas of Cuyahoga County, Ohio sentenced Petitioner.  (Doc. No. 9-1, Exh. 15.)  Cuyahoga County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### VI.  The Merits of Petitioner's Claims[3]

**A.     Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered

---

[2]  This Court denied a subsequent motion by Petitioner to expand the record.  (Doc. Nos. 19, 23.)

[3]  Respondent's Return of Writ does not argue that the substance of ground one, Plaintiff's sole  remaining ground for relief, was procedurally defaulted or not fairly presented.  (Doc.  No. 17.)  Nonetheless, Petitioner argues at length in his Traverse that his claim in ground one was fairly presented as a federal constitutional claim.  (Doc. No. 25.)  Indeed, a review of his appellate brief indicates that he did argue he was prevented from presenting a defense and relied on United States Supreme Court precedent.  (Doc. No. 9-1, Exh. 21 at p. 12.)  As such, the Court proceeds to the merits of the claim.

5

the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. See *Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. See *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is

6

"contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  See *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id*. at 520-21 (internal citations and quotation marks omitted).

## B.     Right to Present a Defense

In his sole ground for relief, Petkovic argues that the trial court prevented him from presenting a defense.  (Doc Nos. 1-2, 25.)  Specifically, Petkovic asserts that his defense expert, forensic psychologist John Fabian, Ph. D., was hindered in his ability to perform a complete evaluation concerning the victim's mental capability to consent to sexual activity.  (*Id*.)  Petitioner asserts that Dr. Fabian needed to interview the victim concerning her prior sexual activities, but the court barred him from doing so due to Ohio's rape shield laws.  Petitioner argues that because the trial court's order prevented Dr. Fabian from making an accurate assessment of the victim's mental capabilities, the defense opted not to call Dr. Fabian at trial.[4]  (*Id*.)

---

[4]  Respondent argues that, to the extent Petitioner is asserting that the Ohio courts misapplied the Ohio Supreme Court's decision in *State v. Zeh*, 31 Ohio St.3d 99, 509 N.E.2d

The Sixth Amendment to the United States Constitution "ensures a defendant the right to present witnesses in his defense." *Kennedy v. Mackie*, 2016 U.S. App. LEXIS 1051 (6th Cir. Jan. 19, 2016) (*citing Taylor v. Illinois*, 484 U.S. 400, 409 (1988); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (*quoting California v. Trombetta*, 467 U.S. 479, 485 (1984) (internal citations omitted))). "Inherent in this right to present a defense is the right to present one's own witnesses." *Harrington v. Jackson*, 1 Fed. App'x 367, 371 (6th Cir. 2001) (*citing Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967)) ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.")

Prior to trial, Petitioner moved for leave to allow an independent examiner to assess Petitioner with respect to her ability to consent to sexual activity. (Doc. No. 9-1 at Exh. 3.) The State objected and the court held a hearing. (Doc. No. 9-1. Exh. 4.) On January 24, 2011, the court held a *voir dire* hearing where Katie Connell, a licensed forensic psychologist who works part time for the Cuyahoga County Board of Development Disabilities, testified. (Doc. No. 17-1, Tr. 24-25, 30-115.) During the

---

414 (1987)), such a claim is not cognizable, because it raises only a violation of state law. (Doc. No. 17 at p. 14.) The Court, however, does not construe petitioner's argument as alleging a violation of state law, and addresses Petitioner's "right to present a defense" argument.

8

hearing, when asked by the court whether the victim's ability to consent was substantially impaired because of her mental condition, Dr. Connell responded "I can't answer specific to that day, her consent with [the Defendant]. I did not evaluate her for that." (Doc. No. 17-1, Tr. 49-50.) When pressed again by the court during the same hearing, Dr. Connell did state that she believed the victim was substantially impaired, but again emphasized that she did not evaluate the victim's "specific to her ability to consent." (Tr. 51-52.) She did not offer an opinion on the victim's ability to consent at trial. (Doc. No. 17-4, Tr. 747-785.)

At a subsequent pre-trial hearing held on March 23, 2011, proposed defense expert, Dr. Fabian, indicated that he had reviewed "Katie Connell's testimony for this case; Bay Village School records, as well as, you know, which include prior psychological testing and school placement, special education, human sexuality education and support; evaluation by Lydia Troha, human sexuality educator; and Bay Village Police Department records, as well as the interview of the alleged victim with Bay Village Police and an investigator." (Doc. No. 17-1, Tr. 143, 150-51.) Dr. Fabian indicated that in order to form an opinion as to the victim's ability to consent to sexual activity, he wished to conduct an Independent Living Skills test, Green Emotional Perception test, and an Advanced Clinical Solutions Cognition test. (Doc. No. 17-1, Tr. 158, 167-173.) In addition, Dr. Fabian indicated it was necessary to inquire into the victim's understanding of sexual issues including "questions about her sexual behavior, conception, pregnancy, and sexually transmitted diseases" including prior sexual experiences with partners which would include the Petitioner. (Doc. No. 17-1, Tr. 158, 167-173.) The State indicated it had no issue with Dr. Fabian conducting the three

9

aforementioned tests, but objected to Dr. Fabian inquiring into the victim's sexual history. (Doc. No. 17-1, Tr. 194-195.) At the hearing, Dr. Fabian seemed to concede that the victim's prior "tests are not aligned with her competency to consent to sexual activity a year ago," which was why he felt he it necessary to ask the victim what happened with the Defendant. (Doc. No. 17-1, Tr. 220.) On April 6, 2011, the trial court issued an order barring the psychologists from delving into the victim's "past sexual history or relationship with the Defendant." (Doc. No. 9-1, Exh. 4 at 2.) The court observed that the alleged victim, "who has been described by both parties as a person whose intellectual functioning is near the borderline, will not have any less rights than other alleged rape victim under Ohio Rape Shield Laws." (*Id*.) The experts, however, were permitted to "testify about test results and their examinations regarding the victim's impairments and strengths, but will not be able to specifically opine about the ultimate issue the parties expect the jury to confront (*i.e.,* 'whether the victim's ability to resist or consent was substantially impaired because of a mental condition' as alleged in Count One of the indictment)." (*Id*.)

The state appellate identified the substance of Petitioner's assignment of error as follows:

> {¶ 8} Specifically, defendant argues that the court erred when it limited the scope of the defense requested independent evaluation of N.P.'s mental capacity. As support for this argument, defendant cites to *State v. Zeh*, 31 Ohio St.3d 99, 105, 509 N.E.2d 414 (1987), which holds that
>
> > when the mental condition of the victim-potential witness is a contested, essential element of the crime charged, the defense may move the court that the state be barred from utilizing evidence of such mental condition obtained in a clinical interview of the witness prior to trial unless the witness voluntarily agrees to a court-appointed, independent examination, with the results being

made available to both sides.

{¶ 9} The rape and gross sexual imposition offenses of which defendant was convicted include an element that the victim's "ability to resist or consent is substantially impaired because of a mental * * * condition," as well as an element that defendant knew or had reasonable cause to believe this. R.C. 2907.02(A)(1)(c); R.C. 2907.05(A)(5).  Substantial impairment can be "established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct." *Zeh*, 31 Ohio St.3d at 103–104.  Additionally, defendant was convicted of kidnapping a victim who was "mentally incompetent." R.C. 2905.01(A)(2).

* * *

{¶ 19} The court upheld the State's objections and limited Dr. Fabian's evaluation accordingly.  The court reasoned that the State's expert, Dr. Connell, did not delve into this line of questioning, because she was not evaluating N.P. for this purpose at the time.[5]  The court stated that a "legitimate inquiry * * * would be something to the effect testing [N.P.'s] capabilities as to intellectual functioning."  Additionally, the court set "as a general rule, I would say don't get into the particulars of this case or this defendant or the events at all."  Essentially, the court determined that "[w]hat will be good for the goose will be good for the gander," and that the State and defendant "will have equal access" to evaluating N.P.'s mental capacity.

{¶ 20} Additionally, the court noted that the rape shield law, R.C. 2907.02(D), prohibited the admissibility of a rape victim's sexual behavior.  The court stated that defendant had a right to confront the witnesses against him, and that N.P.'s credibility and the "consensual aspects" of the case could be tested during her cross-examination.

---

[5]  It is questionable whether Dr. Connell is correctly characterized as the State's expert.  Earlier in its decision, the state appellate court emphasized that when Dr. Connell received the referral, Petkovic had not been arrested or indicted.  *Petkovic*, 2012-Ohio-4050 at ¶¶10.  At the *voir dire* hearing, the State argued that Dr. Connell performed an "independent evaluation" as her interview of the victim was done in the course and scope of her employment with the Cuyahoga County Board of Development Disabilities and was not requested by the State, the prosecutor's office, or even by the police. (Doc. No. 17-1, Tr. 66-67.)   Dr. Connell herself testified that her evaluation of the victim was not geared towards determining whether the victim was substantially impaired in her mental ability to consent to sexual activity.  (Doc. No. 17-1, Tr. 57-58.)

11

> {¶ 21} After the evaluation, Dr. Fabian reported that he was "unable to reach a decision on the very matter for which he was retained," *i.e.*, "to evaluate [N.P.'s] ability to consent to the sexual relationship between her and [defendant]." Accordingly, defendant opted not to call Dr. Fabian as a witness during the proceedings.
>
> {¶ 22} Trial courts are vested with broad discretion to determine issues involving the admissibility of evidence, by balancing relevancy, probative value, and the danger of prejudicial effect. Evid.R. 403; *State v. Adams*, 62 Ohio St.2d 151, 404 N.E .2d 144 (1980). We will not disturb this balancing act absent an abuse of discretion. *State v. Slagle*, 65 Ohio St.3d 597, 605 N.E .2d 916 (1992).
>
> {¶ 23} Upon review, we cannot say that the court abused its discretion in the case at hand.  Actual consent is distinct from the ability to legally consent.  In other words, whether N.P. consented is irrelevant if she was not capable of consenting under the offenses with which defendant was charged.  Compare *State v. Haywood*, 8th Dist. No. 78276 (June 7, 2001) (rejecting a defense of consent to the rape of a 12–year–old girl, because it is contrary to R.C. 2907.02(A)(1)(b). "Simply put, a child under thirteen cannot validly consent to engage in sexual conduct * * * ").
>
> {¶ 24} Accordingly, defendant's first assignment of error is overruled.

*Petkovic*, 2012-Ohio-4050 at ¶¶8-9, 19-24.

The Court finds nothing unreasonable with respect to the state court's decision to prevent the defense expert from delving into the victim's sexual history. The petition cites cases standing for the proposition that a defendant has a right to cross-examine the witnesses offered against him. (Doc. No. 1-2.) Petitioner, however, has not demonstrated or even argued that his counsel was prevented from cross-examining any witnesses at trial and counsel did, in fact, cross-examine both the victim and Dr. Connell. (Doc. No. 17, Tr. 693-732, 777-783.)  Petitioner also relies on cases stating that the Compulsory Process Clause grants a defendant a right to call witnesses on his behalf and to compel the attendance of such witnesses at trial.  (Doc. Nos. 1-2, 25.) These cases too are inapposite.  Petkovic has not argued that the trial court barred Dr.

Fabian from testifying at trial, as the petition even states that "[u]ltimately, *the defense did not call Dr. Fabian* as a witness ..."  (Doc. No. 1-2 at ¶4) (emphasis added).  To the contrary, the state court's ruling expressly would have allowed Dr. Fabian to testify had the defense chosen to call him.  Instead, it was defense counsel that apparently made the strategic decision that it was not beneficial to call Dr. Fabian if he could not probe into the victim's sexual history.

Thus, the real thrust of Petitioner's argument is that the trial court's application of Ohio's rape shield laws inhibited his proposed expert from forming an opinion as to whether the victim was sufficiently mentally competent to be capable of consenting to sexual activity.  In the context of a criminal prosecution, the Sixth Circuit Court of Appeals has noted that "[b]ecause expert testimony often forms a critical part of a defendant's presentation of evidence, '[i]n rare instances,' a district court's exclusion of testimony" due to a violation of a federal evidentiary rule "*might* violate a defendant's Sixth Amendment right to present a defense."  United States v. Smead, 317 Fed. App'x 457, 462-63 (6th Cir. 2008) (emphasis added) (*citing* United States v. Vasilakos, 508 F.3d 401, 410 (6th Cir. 2007)).  That being said, a defendant's right to present a complete defense is not limitless:

> A defendant's right to present relevant evidence is not unlimited, but
> rather is subject to reasonable restrictions.  A defendant's interest in
> presenting such evidence may thus "bow to accommodate other
> legitimate interests in the criminal trial process."  As a result, state and
> federal rulemakers have broad latitude under the Constitution to establish
> rules excluding evidence from criminal trials.  Such rules do not abridge
> an accused's right to present a defense so long as they are not "arbitrary"
> or "disproportionate to the purposes they are designed to serve."
> Moreover, we have found the exclusion of evidence to be
> unconstitutionally arbitrary or disproportionate only where it has infringed

upon a weighty interest of the accused.

United States v. Scheffer, 523 U.S. 303, 308 (1998) (citations and footnotes omitted). "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Holmes v. South Carolina, 547 U.S. 319, 326 (2006). The right to present relevant testimony may bow to other legitimate interests in the criminal trial process. *Rock v. Arkansas*, 483 U.S. 44, 55 (1987).

Here, Petkovic has not cited any clearly established Supreme Court precedent suggesting that Ohio's rape shield laws, or any other state's rape shield laws for that matter, unconstitutionally impinge on a defendant's right to present a defense. To the contrary, the Sixth Circuit Court of Appeals has observed that "[t]he United States Supreme Court has never held that rape-shield statutes do not represent a legitimate state interest, nor has it ever held that highly probative evidence will necessarily outweigh that interest." Gagne v. Booker, 680 F.3d 493, 516 (6th Cir. 2012); *accord* Batey v. Haas, 573 Fed. Appx. 590, 594 (6th Cir. 2014) ("So long as the trial judge reasonably concludes that the State's interest in exclusion outweighs the defendant's need for the evidence, the Constitution permits the rape shield to do its intended work."); Buchanan v. Harry, 2014 U.S. Dist. LEXIS 66665 at **17-18 (E.D. Mich. May 15, 2014) ("The Supreme Court has noted that the legitimate state interests behind a rape-shield statute include giving a rape victim a heightened protection against surprise, harassment, and unnecessary invasions of privacy and may allow the exclusion of

14

relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted.") (*citing* *Michigan v. Lucas*, 500 U.S. 145, 152-53 (1991)).

Petkovic could have called Dr. Fabian to testify concerning the victim's general intellectual functioning much like Dr. Connell testified at trial.[6]  The Court can only speculate as to why Dr. Fabian was not called to testify, though at the pre-trial hearing he did seem to express the opinion that the victim's prior tests and records were not "aligned with her competency to consent to sexual activity a year ago." (Doc. No. 17-1, Tr. 220.)  Based on his *voir dire* testimony, it is clear Dr. Fabian wanted to delve into the victim's sexual past to see if he might reach a different conclusion concerning the victim's ability to consent.  The trial court's decision to preclude such a fishing expedition, based on Ohio's rape shield law, served a legitimate state interest, as it protected a mentally impaired victim from being subjected to harassment and an unnecessary invasion of privacy.  Moreover, there is no clearly established federal law finding rape-shield statutes impermissibly impinge on the right to present a defense.  Therefore, the Court cannot find that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law concerning Petitioner's right to present a defense.

---

[6] At no point during her *trial* testimony did Dr. Connell opine as to whether she believed the victim was mentally capable of consenting to sexual activity.  (Doc. No. 17-4, Tr. 747-785.)  On cross-examination, Dr. Connell acknowledged that she was never asked to determine whether the victim was substantially impaired in her ability to consent and agreed that "substantial impairment" is a legal and not a medical term.  (Tr. 778.)

### VII. Conclusion.

For all the reasons set forth above, the petition should be DENIED.

Date: May 23, 2016　　　　　　　　　　　　/s/ *Nancy A. Vecchiarelli*
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111.